UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| PATRICK NKANSAH, ET AL. | CIVIL ACTION NO. 3:15-CV-00646 |
|---|---|
| | JUDGE JOHN W. DEGRAVELLES |
| VERSUS | |
| | MAGISTRATE JUDGE |
| EDGAR A. MARTINEZ, ET AL. | RICHARD L. BOURGEOIS, JR. |

**RULING AND ORDER ON DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXPERT REPORT AND TESTIMONY OF LAURA SCHEXNAYDER**

Before the Court is the motion by defendant Depositors Insurance Company ("Depositors") to exclude the expert report and testimony of Laura Schexnayder. (Doc. 52.) The motion is opposed by plaintiff Patrick Nkansah ("Nkansah" or "Plaintiff").[1] (Doc. 66.)[2] A reply memorandum has been filed in support of the motion. (Doc. 72.) For the reasons which follow, the motion is granted in part and denied in part.

**I.   BACKGROUND**

This suit arises out of a motor vehicle accident between two tractor-trailer vehicles, one being driven by Plaintiff and the other driven by defendant Edgar A. Martinez ("Martinez"). Plaintiffs allege Martinez was at fault in the accident. (Docs. 1-3, 9 and 11.) Also sued is Depositors as the insurer for Martinez. Liability for the accident is disputed. (Docs. 4, 10 and 11.) The case was removed to this Court based on diversity of citizenship jurisdiction. (Doc. 1.)

In Plaintiffs' First Supplemental and Amending Complaint for Damages, Nkansah alleges he suffered damages in the form of physical and mental anguish, pain and suffering, as well as

---

[1] Nkansah's employer ATL Worldwide, LLC, is also a plaintiff. (Docs. 1-3, 9.) They are collectively referred to as "Plaintiffs".
[2] The Court notes that Plaintiff's opposition, one and a half pages in length and containing not a single case citation, was singularly unhelpful to the Court in its consideration of the issues in this case.

loss of income caused by his alleged "inability to drive [a] truck." (Doc. 9 ¶ 7.) In support of this claim for economic losses, Plaintiffs offer the expert report and testimony of bookkeeper and tax preparer Laura Schexnayder, the manager of a tax services company. It is the report, affidavit and deposition testimony of Ms. Schexnayder that is the subject of the present motion.

## II. SUMMARY OF ARGUMENT OF THE PARTIES

Depositors argues that the Court should exclude the testimony and report of Ms. Schexnayder because (1) the report is deficient and does not comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) (Doc. 52-1 at 4, 12-13); (2) she is not qualified to be an expert, (*id*. at 4, 13–14); and (3) she did not employ proper scientific or technical methodology, (*id.* at 4, 14–16).

Nkansah responds that Schexnayder's training and practical and professional experience qualify her to render the proffered opinions, that her opinions as expressed in her report, affidavit and discovery deposition are sufficient to meet the requirements of Rule 26, and her opinions are supported by a sufficient methodology. (Doc. 66-1.) He offers her affidavit with more detailed information about Schexnayder's qualifications and opinions. (Doc. 66-2.)

Depositors replies that her qualifications "have nothing to do with her opinions in this case" (Doc. 72 at 1–2) and her testimony does not require scientific, technical or other specialized knowledge that will help the jury understand the evidence or determine a fact in issue. (*Id*. at 2.) Further, Depositors challenges Schexnayder's affidavit as the product of the leading questions of Plaintiffs' counsel which is contradicted by her deposition testimony. (*Id*. at 3–5.)

The details of the parties' arguments will be addressed in the Court's ruling.

### III. LEGAL STANDARD

Pursuant to Rule 702, "a witness who is qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise" if its preconditions are met. Fed. R. Evid. 702. Rule 702, however, does not render all expert testimony admissible. *United States v Scavo*, 593 F.2d 837, 844 (8th Cir. 1979). Rather, beyond being subject to the Rule's helpfulness requirement, expert testimony can still be excluded per Rule 403. Fed. R. Evid. 403; *United States v Green*, 548 F.2d 1261, 1270 (6th Cir. 1977). Entirely discretionary, Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

This is a *Daubert* challenge based on the expert's alleged failure to use an accepted methodology and her opinion's alleged lack of an adequate factual foundation. (Doc. 52-1 at 4.) *Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id*. (quoting *Rodriquez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. . . . *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." . . . The Court summarized:
>
> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988-89 (5th Cir. 1997) (internal citations omitted).

The cases following *Daubert* have expanded the factors and explained the listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

This Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, . . . which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. . . . Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1, 2010 U.S. Dist. LEXIS 108845, at *2-3 (M.D. La. Oct. 12, 2010) (internal citation omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138-39 (holding that appellate courts review a trial court's decision

to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) (holding "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony"); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*, No. 02-2565, 2003 WL 22427981, 2003 U.S. Dist. LEXIS 19052 (E.D. La. Oct. 24, 2003) (Vance, J.):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. . . . As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." . . . The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

*Id.*, 2003 WL 22427981, at *3, 2003 U.S. Dist. LEXIS 19052, at *7-*8 (E.D. La. Oct. 24, 2003) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987))).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the

5

nature of the issue, the expert's particular expertise and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in, e.g.*, *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

In that vein, the Fifth Circuit has concluded that "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (citing and quoting *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1297 (8th Cir. 1997)).

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations.…Because there are areas of expertise, such as the "social sciences in which the research theories and opinions cannot have the exactness of hard science methodologies", . . . trial judges are given broad discretion to determine "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case."

*Id.* (internal citations omitted) (relying on *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

IV. **SCHEXNAYDER'S QUALIFICATIONS**

In its argument attacking Schexnayder's credentials, Depositors complains that she has only a bachelor's degree in general studies with a minor in management, is the managing member of a tax service, and she is admittedly not an economist, a vocational rehabilitation specialist or an expert in occupational therapy. (Doc. 52-1 at 4.) She has never acted as an expert witness before in any matter and specifically, "never previously attempted to estimate future income of a truck driver." (*Id.* at 14.)

Plaintiffs counter with Schexnayder's affidavit in which he points to her bookkeeping and tax preparation business, where she has had "several clients who are long-haul truckers and [has] handle[d] all of their accounting work, including the preparation of their tax returns" (Doc. 66-2 at 2); further she has "'walked in the shoes' of all of [her] clients, as they struggle with their cash

6

flow problems and other stresses and strains of operating a small business." (*Id*.) Plaintiffs argue that Schexnayder's father was a long-haul trucker who operated his business for some 30 years, and Schexnayder trained her mother to set up the books for her father's trucking business and assisted with the preparation of his business records and tax returns. (*Id*.) Significantly, Schexnayder spent years overseeing the operation of her father's business from an accounting point of view. (*Id*.) According to Schexnayder's affidavit, the calculations made in her report are identical to the calculations she makes "every day at my office . . . for my clients." (*Id*. at 3.)

In its reply, Depositors argues that the "qualifications and experience detailed in Plaintiffs' opposition and Schexnayder's affidavit have nothing to do with her opinions in this case." (Doc. 72 at 1-2.) It also maintains that her opinions do not require expert testimony, are the product of the leading questions of Plaintiff's counsel, (*id*. at 2,) and are contradicted by her deposition testimony, (*id*. at 3-4.)

The Court finds that Schexnayder's qualifications are sufficient to allow her to testify as to certain, but not all of the opinions in her report. As a part of her bookkeeping and tax preparation business, she has served clients who operated small trucking businesses. (Doc. 66-2 at 2.) She helped oversee the accounting aspects of her father's long-haul trucking business, trained her mother to set up the books for this business and assisted with the preparation of his business records and tax returns. (*Id*.) She is thus familiar with the business operations of commercial truckers.

Federal Rule of Evidence 702 requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony and then leave to the jury the extent of those qualifications. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 506 (5th Cir. 1999). The Supreme Court in *Kumho Tire*, 526 U.S. at 148-149, 156,

and *Daubert*, 509 U.S. at 592, endorsed expert testimony based on personal observation and experience.[3] Fed. R. Evid. 702 Advisory Committee Notes (2000) state, "the text of rule 702 expressly contemplates that an expert may be qualified on the basis of experience" which may be the "predominant, if not sole, basis for a great deal of reliable expert testimony."

If the expert's testimony does not rest on traditional scientific methods, the court may permit testimony "where a proposed expert witness bases her testimony on practical experience rather than scientific analysis." *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). "In such cases, where a proposed expert witness bases her testimony on practical experience rather than scientific analysis, courts recognize that [e]xperts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience." *Id*., at 412 (quoting *Kumho Tire*, 526 U.S. at 149–50 (1999)); *see also Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) ("there is no question that an expert may still properly base his testimony on 'professional study or *personal experience*.'" (emphasis added); *Watson v. Snap-On Tools, Inc*., No. 04-1313-A, 2006 WL 2114558 at *5 (W.D. La. 2006).

While she has never testified as an expert witness before, this fact alone certainly does not disqualify her since, for every expert witness, there must necessarily be a first time. The courts have rejected the notion that the Federal Rules of Evidence require an expert to have previously opined on a specific issue to be "qualified" as an expert on that issue. *See, e.g. BP Exploration & Prod., Inc. v. Callidus Techs, L.L.C.*, No. 02-2318, 2003 WL 26118097 at *1–*2 (E.D. La. Apr. 8, 2003). Furthermore, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson v.*

---

[3] *See also, LeBlanc v. Chevron USA, Inc*., 396 F. App'x. 94, 100 (5th Cir. 2010) (per curium) (unpublished).

*Bioremedi Therapeutic Systems, Inc*. 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

Schexnayder, through her bookkeeping and tax services, has extensive personal experience in the financial aspects of small trucking businesses. She is therefore qualified to give expert testimony, assuming there is an adequate factual foundation for such testimony,[4] on the question of what an owner-operator trucker has the capacity to make in earnings. She is qualified to examine Nakansah's earnings information to determine what he was earning before, at the time of and following the accident. She is able to explain the business differences between a long haul trucker working as an employee and one operating his own business as an owner-operator. Based on her experience, she is qualified to testify as to whether one with Nkansah's experience could become an owner-operator.

With respect to her mathematical calculations of future lost earnings or loss of earning capacity, the Court finds that Schexnayder is not qualified to give opinion testimony. While there is economic and jurisprudential support for calculating loss of future earnings by simply multiplying earnings times work life expectancy (the "total offset" method, sometimes referred to as the "Alaska Rule"),[5] this witness pretends no expertise in projecting future lost income (and does not have it), does not offer the total offset methodology as the basis for her opinion and, in

---

[4] This issue is addressed elsewhere in this ruling.

[5] This methodology of determining future earnings calls for inflation to be offset by the discount rate, arguably a convenient and economically sound way to project future lost earnings. This method has been approved by some Louisiana courts. *Schwamb v. Delta Airlines, Inc.,* 516 So.2d 452 (La. App. 1st Cir. 1987); *Sharkey v. Sterling Drug, Inc.* 600 So.2d 701 (La. App. 1st Cir. 1992); *Brewer v. J.B. Hunt Transport, Inc*., 2008-1666 (La. App. 1st Cir. 3/18/09); 9 So.3d 932, 952, n. 22, *rev. in part on other grounds*, 09-1408 (La. 3/16/10); 35 So.3d 230 (applying total offset method to claim for future medical expenses). This method has also been approved of in the Fifth Circuit in cases applying state law. *See Lucas v. United States*, 807 F.2d 414, 422–423 (5th Cir.1986) (affirming award using "total offset" method of calculating damages when no state law rejected this approach, even though the Fifth Circuit rejected this method in cases applying substantive federal law); *Miller v. Credit*, No. 12-138, 2015 WL 4132981, at *13 (M.D. La. July 8, 2015), *aff'd sub nom. Miller v. Captain Credit*, 631 F. App'x 248 (5th Cir. 2016) (citing *Sharkey*; *Shwamb*; Wolfgang W. Franz, Simplifying Future Lost Earnings, 13 TRIAL 34 (Aug. 1977)) (finding that jury award was supported by the record and that it could have even been higher had the "total offset" method been used for determining lost future earnings).

fact offered no methodology in her support of her projections. As is discussed below, there is some support in Louisiana law that an expert is not required for this kind of projection but that is not the issue before the Court.

In addition, Schexnayder is certainly not qualified to opine regarding how Nkansah's physical condition before or after the accident in question might have qualified or now disqualify him from any occupation, including trucking. It appears that Plaintiffs do not proffer her as an expert in this area, and if they did, such proffer would be disallowed.

The Court notes, however, that with respect to proving a future loss of earnings capacity claim, neither vocational rehabilitation expert testimony nor economic expert testimony is required. *Barocco v. Ennis, Inc.*, 100 F. App'x. 965, 968 (5th Cir. 2004); *Rea v. Wisconsin Coach Lines, Inc.*, No. 12-1252, 2014 WL 5039591 at *4 (E.D. La. Oct. 8, 2014); *McLeod v. New Orleans Belt Railroad Commission*, No. 10-1907, 2013 WL 322109 at *5 (E.D. La. Jan. 28, 2013); *Barclay v. Cameron Charter Boats, Inc.*, No. 09-462, 2011 WL 3468380, at *4 n.1 (W.D. La. Aug. 8, 2011). "In short, all that Louisiana law requires a plaintiff to show in order to receive an award for loss of future earning capacity is 'medical evidence which at least indicates there could be a residual disability causally related to the accident." *Barrocco*, 100 F. App'x. at 968 (quoting *Bize v. Boyer*, 408 So. 2d 1309, 1311–12 (La. 1982)). Furthermore, lay testimony as well as other items, such as actuarial tables, may be introduced to support the loss of earning capacity claim. *Id*.

In any event, for the loss of earning capacity claim, what Nkansah previously earned is not the issue and the claim does not necessarily involve mathematical calculations.

> **What plaintiff earned before and after the injury does not constitute the measure. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment or diminishment of earning power.** And while his earning capacity at the time of injury is relevant, it is not necessarily

10

determinative of his future ability to earn. [(citation omitted)] Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury. . . .

**Earning capacity in itself is not necessarily determined by actual loss; damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity**. The theory is that the **injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily**.

*Fecke v. Bd. of Supervisors of Louisiana State Univ*, 2015-1806 (La. 9/23/16), -- So. 3d ---, 2016 WL 5390302 at *21-22, *modified on reh'g sub nom. Fecke v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 2015-1806 (La. 10/19/16) (quoting *Folse v. Fakouri*, 371 So.2d 1120, 1123–24 (La. 1979) (emphasis added by *Fecke* court)).

## V.    SCHEXNAYDER'S REPORT

### A.  Overview of the Report and Parties' Arguments

While Schexnayder's report (Doc 52-6) is undoubtedly spare in its language, the following can be reasonably gleaned from it. It is six pages long. Page two of the report (Doc. 52-6 at 2) summarizes Nkansah's monthly income as reflected in his pay stubs for all of 2014 and for five months of 2013 and 2015. Page four of the report contains information regarding the earnings advantages of an owner-operator over a hired driver and supplies the median income for "heavy and tractor-trailer drivers" purportedly derived from the Bureau of Labor Statistics (*Id*. at 4). She also states the average income for long-haul truck owner-operators from two Internet web sources, Werner Enterprises and Indeed, including average annual salaries for owner-operators. (*Id.*) Pages five and six contain certain information apparently derived from the Owner Operator Independent Drivers Association (OOIDA) website. (*Id*., at 5-6.) On page three of the report, she summarizes her calculations comparing Nkansah's earning capacity as an "over the road truck driver" with that of an "owner operator trucker." Page one of the report, labeled "final

11

results," states in narrative form, Nkansah's respective earning capacities as a long haul truck driver and as an owner-operator. (*Id.* at 1.)

While Schexnayder opines as to what Nkansah "could be making as an owner-operator trucker," she gives no opinion regarding his physical capacity to be an owner-operator before the accident or that he is unable to become one as a result of the accident. Her calculations of the life time earnings capacities for the two occupations seem to be a simple multiplication of the respective earnings capacities of each multiplied by the difference between his age and an "estimated retirement age of 67." (*Id.* at 1, 3.) Her summary of data presumably pulled from the OOIDA web site states that "[m]ost independent drivers plan on retiring at age 67 years of age . . ." (*Id.* at 6.)

In her affidavit, Schexnayder expands upon the basis for her calculations. She states that her conclusion regarding what an independent operator can make is based not only on her Internet research but also on her observation and involvement of her father's thirty years of operating as a long-haul trucker and her work keeping the books for independent owner-operators for years. (Doc. 66-2 at 3-4.) In addition, Nkansah provided to her the names of five individuals he knew to have successfully transitioned from employee trucker to owner-operators. (*Id.* at 4-5.) In each of the five cases, they were able to successfully convert from long-haul trucking as an employee to an independent owner-operator. (*Id.* at 4-5.) She claims that the data gathered from the two internet sites and her personal and professional experience support her opinions as to the potential earnings of an owner-operator trucker. (*Id.* at 3-4)

Depositors argues that the report does not comply with certain requirements of Rule 26 and specifically, that the report contains no "complete statement" of her opinion (Doc. 52-1 at 12) and the opinions are "conclusory" and "completely devoid of any mention of the basis of her

conclusions . . ." (*Id*. at 12–13.) In its reply, Depositors maintains that some of her opinions and her "simple mathematical calculation[s]" do not require expert testimony. (Doc. 72 at 2.) It also argues that the affidavit used by Plaintiff "is a combination of Plaintiff's counsel leading deposition questions and contradictions of her own deposition testimony." (*Id*. at 3-5.) Finally, Depositors complains that the statements taken of Nkansah's friends who are owner-operators "should also be disregarded as Schexnayder explicitly stated in her deposition she did not have that information at the time she prepared her report and, thus, the information had absolutely no bearing on her opinions." (*Id*. at 5 (citing her deposition at pages 36–37).)

  B. Analysis

While the report is bare bones, to say the least, especially when viewed together with her deposition and supplemental affidavit,[6] the opinions in the report can be ascertained. The report

---

[6] Numerous cases have declined to exclude an expert where matters outside an expert report were discussed at a deposition, where an opportunity to re-depose the expert was offered, and/or where a continuance was allowed. *See, e.g., Jackson v. Allstate Ins. Co*., 785 F.3d 1193, 1203–04 (8th Cir. 2015) (affirming district court's finding that the untimely disclosure of a supplemental report (concerning a field study conducted on the morning of the expert's deposition) was "substantially justified and . . . harmless" because "[t]he record indicate[d] [plaintiff] fully deposed [the expert] with respect to the field study and never requested the opportunity to take a supplemental deposition" and because [plaintiff] "fail[ed] to identify any information in the report that took her by surprise or that she needed to discuss with [the expert] in more detail" (citations omitted)); *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 888–89 (8th Cir. 2006) (finding no abuse of the trial court's discretion because: "While [the expert] did not include his reliance on x-rays in his pretrial disclosure, he did discuss these x-rays during his deposition. Therefore, [plaintiff] was on notice that [the expert] might rely on these x-rays during his trial testimony. A harmless violation of Rule 26 does not mandate exclusion of the evidence." (citation omitted)); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 11-374, 2014 WL 1664263 (E.D. Ky. Apr. 25, 2014) ("the preliminary nature of [the expert's] report does not require its exclusion and any risk of 'unfair surprise' or 'ambush at trial' has been mooted by the later deposition."); *Franklin v. United States*, No. 12-1167, 2014 WL 11497835, at *12–*13 (D.N.M. Feb. 18, 2014) (collecting cases on the issue and holding that opinion elicited from expert during deposition that was not reflected in his expert report was "harmless" and did not create "unfair surprise"); *Bracey v. Jolley*, No. 10-4064, 2012 WL 12870257, at *4 (N.D. Ga. Aug. 3, 2012) (the deficiency in the expert report was harmless because, during the deposition, the "Defendants were able to elicit the sources upon which [the expert] relied"); *E.E.O.C. v. Freemen*, 626 F. Supp. 2d 811, 822 (M.D. Tenn. 2009) ( "In the present case, both of the deficiencies alleged by Defendant represent, at worst, instances of harmless error. Dr. Cohen's deposition remedied any failures to disclose within the Report. . . . [I]n the present case, Defendant's submitted their Motion to Strike Expert Report and Testimony after Dr. Cohen's deposition, arguing that Defendant suffered prejudice in its inability to prepare for cross-examination at trial. Accordingly, the Rule 26(a)(2) purpose of reducing the need or length of expert depositions is moot in this case. The relevant purpose of Rule 26(a)(2) is thus notice to Defendant pending trial, and under these circumstances, the Court finds that deposition disclosure may be curative." (citations omitted)); *Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 397 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. Cty. of Orange*, 248 F. App'x 232 (2d Cir. 2007) (allowing expert doctor to testify despite "deficient" report and failure to

is sufficient in certain respects, but inadequate in others. In it, she opines as to what Nkansah was making as a truck driver at the time of the accident. She opines that Nkansah had the capacity without the alleged injury to be an owner-operator. Her opinions are based on her professional experience and familiarity and work with small trucking businesses including those of owner-operators, as well as information generated through internet research and information provided by her client. She states that, in her opinion, an owner-operator could make an average of $120,500 per year and supports this figure from data derived from web sites of two businesses which sponsor owner-operators.

While her report attempts to quantify the total amount of Nkansah's loss over his work life, this part of her report fails for two reasons: first, as stated above, she lacks the qualifications

---

comply with Rule 26 because, among other reasons, (1) the expert's "testimony [wa]s essential to plaintiff's case"; (2) because "plaintiffs annexed a declaration by [the expert] to their opposition papers further detailing her conclusions with respect to the care provided to each plaintiff and her bases for those conclusions; and (3) "plaintiffs [were] willing to make [the expert] available for deposition by defendants prior to trial if necessary."); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 192 F.R.D. 511, 514 (D. Md. 2000) (changes of opinion made by the expert to his report during a subsequent deposition were not excluded as they were "both technically timely [under Fed. R. Civ. P. 26(e)], and sufficiently in advance of trial that [they] cannot fairly be characterized as ambush tactics" (citation omitted)); *cf. Iacangelo v. Georgetown Univ.*, 272 F.R.D. 233, 234 (D.D.C. 2011) (stating that, "Technically, all expert disclosures required by Rule 26(a)(2)(B) must be made in the expert's written report. . . . In practice, however, a party is considered to have met its obligations for expert disclosure so long as all required information is divulged in either the written report *or a subsequent deposition of the expert*," (emphasis added) (citations omitted), but striking plaintiffs' purported rebuttal supplemental report when they "filed [the supplement] two years after all expert discovery had closed and thus more than two years after they had received defendants' expert reports and had deposed those experts," when the supplement was filed less than one month before trial, and when there was no time to reopen discovery); *United States v. Roberts*, 830 F. Supp. 2d 372, 386-87 (M.D. Tenn. 2011) (finding that an expert was competent to testify under Fed. R. Evid. 702—despite the fact that his report was "troubling" to the Court for failing to provide the basis and reasons for his opinions—and stating: "While Rule 26(a) seeks to prevent 'ambush at trial' and to 'shorten or decrease the need for expert deposition, those concerns can become moot when a deposition is actually taken. Moreover, because one purpose of Rule 26(a)(2) is to provide notice, a 'deposition disclosure may be curative,' and a *Daubert* hearing can serve to elucidate the basis for an expert opinion." (citations omitted)).

  *Gillum v. United States*, 309 F. App'x 267 (10th Cir. 2009) is perhaps the most persuasive case on this issue. There, the Tenth Circuit reversed the district court's exclusion of plaintiff's expert and granting of summary judgment because (1) "[b]eyond the inadequate report, the [defendant] had [the doctor's] deposition and [plaintiff's] response to the motion in limine, which discussed the reasons and bases for [the doctor's] opinion," and (2) because the plaintiff "had arranged for [the doctor] to be available for a second deposition." *Id.* As a result, "any prejudice accruing to the [defendant] from an inadequate opportunity to prepare for the first deposition was capable of being cured." *Id.* The Tenth Circuit powerfully reasoned: "The parties to a litigation are not merely players in a game, trying to catch each other out. Rather, litigation should promote the finding of the truth, and, wherever possible, the resolution of cases on their merits." *Id.*

and experience to perform this kind of analysis; and, second, she fails to support her calculation with any kind of methodology short of simple multiplication. Further, her choice of age 67 as Nkansah's age of retirement (yielding a 29 year work life expectancy) is based on nothing but information derived from OOIDA that "[m]ost independent drivers plan on retiring at 67 years of age with the largest majority of them expecting Social Security to pay for their retirement." (Doc. 52-6 at 6.) Needless to say, this does not address the issue of work life expectancy but only what most drivers "plan for". Hence, this witness will not be permitted to testify on this issue. This is not to say that Plaintiff will be prevented from testifying that he intended to work until age 67 but testimony that age 67 is his work life expectancy is simply not adequately supported by Ms. Schexnayder as an expert opinion.

However, the potential for an individual with Nkansah's background and experience to have transitioned from employee to owner-operator and the earning potential which could have been derived therefrom is within her expertise. The Court finds her methodology of utilizing her personal and professional experience, publicly available websites, and information provided by her client does in this instance meets the *Daubert* standard. The *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise and the subject of his testimony." *Kuhmo*, 526 U.S. at 150 (cited with approval in, *e.g. Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)). Here the Court finds Schexnayder's methodology sufficiently reliable given the nature of the issue and the limited subject matter of the testimony about which she will be permitted to testify.

Depositors criticizes Schexnayder's reliance on web sites and generally, the insufficiency of support for Schexnayder's opinions. First, it is proper for an expert to rely on facts and data

supplied by third parties. Fed. R. Evid. 703; *Gussack Realty Co. v. Xerox Co.*, 224 F.3d 85, 94 (2d Cir. 2000). Further "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land More Or Less Situated in Lefore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial Trading Co. v. Travelers Property and Casualty Co. of America*, No. 06-4262, 2009 WL 2356292, at *3 (E.D. La. July 28, 2009).

While Depositors points to alleged inconsistencies and contradictions between Schexnayder's report, affidavit and her deposition testimony, "[m]atters left for the jury's consideration include the alleged miscalculations, erroneous assumptions and inconsistencies that plaintiffs object to." *Imperial Trading*, 2009 WL 2356292 at *3 (citing *Southwire Co. v. J.P. Morgan Chase & Co.*, 258 F. Supp.2d 908, 935 (W.D. Wis. 2007) ("the alleged errors and inconsistencies are grounds for impeaching the credibility of the experts and the reliability of their ultimate finding; however, mistakes and miscalculations are not grounds for excluding evidence." (citing *Daubert*, 509 U.S. at 596))). Indeed, in this case, Depositors has hired expert economist Holly Sharp to challenge the opinions of Ms. Schexnayder. To the extent Ms. Schexnayder is allowed to give opinion testimony, it will be left to the jury to determine the respective weight and credibility to be given to these dueling experts.

## VI. CONCLUSION

Accordingly, Depositors' Motion in Limine to Exclude Expert Report and Testimony of Laura Schexnayder (Doc. 52) is granted in part and denied in part. Schexnayder will not be permitted to testify, directly or indirectly, regarding the total amount of loss of future earnings or

loss of earning capacity and the effect, if any, that Nkansah's alleged physical and mental injuries may have had on his ability to perform in any employment, including truck driver employee or owner-operator trucker. Schexnayder will be permitted to testify regarding generally the business and financial operations of truck driver employees and independent owner operator truckers; what Nkansah was earning before, at, and following the accident in question; her research and opinions regarding the earning capacity of an owner operator trucker; generally the credentials and qualifications required to become an owner operator trucker and specifically whether one with Nakansah's experience and background could have become one.

Signed in Baton Rouge, Louisiana, on June 28, 2017.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**