# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICK NKANSAH, ET AL. | CIVIL ACTION NO. 3:15-CV-00646 |
| | JUDGE JOHN W. DEGRAVELLES |
| VERSUS | |
| | MAGISTRATE JUDGE |
| EDGAR A. MARTINEZ, ET AL. | RICHARD L. BOURGEOIS, JR. |

### RULING AND ORDER ON DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXPERT REPORT AND TESTIMONY OF G. RANDOLPH RICE

Before the Court is the Motion in Limine to Exclude Expert Report and Testimony of G. Randolph Rice filed by defendant Depositors Insurance Company ("Defendant" or "Depositors"). (Doc. 53.) The motion is opposed by plaintiff Patrick Nkansah ("Plaintiff" or "Nkansah"). (Doc. 64.) Depositors filed a reply memorandum. (Doc. 71.) For the reasons which follow, the motion is granted in part and denied in part.

## I.  BACKGROUND

This suit arises out of a motor vehicle accident between two tractor-trailer vehicles, one being driven by Plaintiff and the other driven by defendant Edgar A Martinez ("Martinez"). Plaintiffs allege Martinez was at fault in the accident. (Docs. 1-3, 9 and 11.) Also sued is Depositors as the insurer for Martinez. Liability for the accident is disputed. (Docs. 4, 10 and 11.) The case was removed to this Court based on diversity of citizenship jurisdiction. (Doc. 1.)

In Plaintiff's First Supplemental and Amending Complaint for Damages, Nkansah alleges he suffered damages in the form of physical and mental anguish, pain and suffering, as well as loss of income caused by his alleged inability to pursue his former occupation. (Doc. 9 ¶ 7.) In support of this claim for economic losses, Nkansah offers the expert report and testimony of

1

economist G. Randolph Rice, PhD. It is the report and testimony of Dr. Rice which is the subject of the present motion.

## II. SUMMARY OF ARGUMENT OF THE PARTIES

Depositors does not question the credentials or qualifications of Dr. Rice. However, "Depositors contends that Dr. Rice's report and testimony should be excluded because Dr. Rice's methodology is inherently flawed in relying upon pure speculative assumptions rather than actual data or facts." (Doc. 53-1 at 3.) Specifically, Depositors complains that Dr. Rice's assumption of a work-life expectancy of 26.07 years is "derived exclusively from an assumption that Mr. Nkansah's attorney asked Dr. Rice to make" (Doc. 53-1 at 4), and is otherwise unsupported. Second, Depositors takes issue with Dr. Rice's failure to consider Nkansah's income tax returns and failure to take into account the need to deduct Nkansah's expenses in order to reach an accurate earnings amount. (Doc. 53-1 at 5-6.) Third, Dr. Rice's opinion is based upon "pure speculation that Mr. Nkansah cannot work as a 'long-haul' trucker and cannot become an 'owner-operator.' " (Doc. 53-1 at 6-8.) Depositors' reply memorandum (Doc. 71) largely restates the arguments made in its original memorandum.

In his opposition, Nkansah argues that his injuries are so severe that he is facing surgery to repair his back. (Doc. 64 at 1.) He maintains that experts are entitled to rely on assumptions and that those relied upon by Rice are the kind economists are entitled to rely on. He points to case law he contends supports this proposition. (Doc. 64 at 2-3.) Such assumptions, if challenged, may affect the weight and credibility to be given to the testimony but, argues Nkansah, not their admissibility. (*Id*.) Any weakness in those assumptions can be tested by Defendants on cross-examination. (*Id*.)

## III. LEGAL STANDARD

Pursuant to Rule 702, "a witness who is qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise" if its preconditions are met. FED. R. EVID. 702. Rule 702, however, does not render all expert testimony admissible. *United States v Scavo*, 593 F.2d 837, 844 (8th Cir. 1979). Rather, beyond being subject to the Rule's helpfulness requirement, expert testimony can still be excluded per Rule 403. FED. R. EVID. 403; *United States v Green*, 548 F.2d 1261, 1270 (6th Cir. 1977). Entirely discretionary, Rule 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

This is a *Daubert* challenge based on the expert's alleged failure to use an accepted methodology and his opinion's alleged lack of an adequate factual foundation. (Doc. 107-1 at 2.) *Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). When *Daubert* is invoked, a district court may, but is not required, to hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, No. 14-20691, 2016 WL 2865256, at *7, 2016 U.S. App. LEXIS 8951, at *11 (5th Cir., May 16, 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.' " *Id.* (quoting *Rodriquez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. . . . *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance." . . . The Court summarized:
>
>> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (internal citations omitted).

The cases following *Daubert* have expanded the factors and explained the listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

This Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, . . . which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. . . . Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, No. 09-171, 2010 WL 3999011, at *1, 2010 U.S. Dist. LEXIS 108845, at *2-3 (M.D. La. Oct. 12, 2010) (internal citation omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138-39 (holding that appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) (holding "[d]istrict courts enjoy wide latitude in determining the admissibility of expert testimony"); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*, No. 02-2565, 2003 WL 22427981, 2003 U.S. Dist. LEXIS 19052 (E.D. La. Oct. 24, 2003) (Vance, J.):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. . . . As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." . . . The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

*Id.* at *3 (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987))).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors

5

identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in, e.g.*, *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 244 (5th Cir. 2002).

In that vein, the Fifth Circuit has concluded that "soft sciences" involve "necessarily diminished methodological precision" when compared to other scientific disciplines like mathematics and engineering. *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (citing and quoting *Jenson v. Eveleth Taconite Co*., 130 F.3d 1287 (8th Cir. 1997)).

> In such instances, other indicia of reliability are considered under *Daubert*, including professional experience, education, training, and observations. *See e.g.*, Because there are areas of expertise, such as the "social sciences in which the research theories and opinions cannot have the exactness of hard science methodologies", . . . trial judges are given broad discretion to determine "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case."

*Id.* (internal citations omitted) (relying on *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

**IV. ANALYSIS**

In its motion, Depositors challenges several assumptions made by Dr. Rice. However, experts are not prohibited from relying on assumptions when reaching their opinions. *Barnes v. Commerce & Industry Insurance Company*, No. 11-0041, 2013 WL 6145309 at *2, (W.D. La. Nov. 21, 2013) (citing *Daubert*, 509 U.S. at 589; *Kuhmo Tire*, 526 U.S. at 153-54; *Nova Consulting Grp., Inc. v. End'g Consulting Servs., Ltd.,* 290 F. App'x 727, 732-33 (5th Cir. 2008) (holding that an expert's opinion was not rendered unreliable merely because he made a number of assumptions)). Indeed, experts frequently make assumptions upon which their opinions rest. "As a general rule, questions related to the bases and sources of an expert's opinions affect the

weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.3 Acres of Land More Or Less Situated in Lefore County, Ms.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 392-93 (5th Cir. 2002 (holding that a party's objection that the expert's self-created database was unreliable did not affect admissibility); *Naquin v. Elevating Boats, LLC,* No. 10-4320, 2012 WL 1664257, at *4 (E.D. La. May 11, 2012); *St Joseph Abbey v. Castille*, No. 10-2717, 2011 WL 2182046, at *1 (E.D. La. June 3, 2011) ("'The reliability of data underlying an expert's opinion goes to the weight of this evidence, but should not serve as a basis for its exclusion." (quoting *Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military, Ltd.*, No. 03-189, 2004 WL 5495590, at *4 (W.D. Tex. Oct. 21, 2004)); *Imperial Trading Co. v. Travelers Property and Casualty Co. of America*, No. 06-4262, 2009 WL 2356292, *3 (E.D. La. July 28, 2009); *Southwire Co. v. J.P. Morgan Chase & Co.,* 258 F. Supp. 2d 908, 935 (W.D. Wis. 2007) (" the alleged errors and inconsistencies are grounds for impeaching the credibility of the experts and the reliability of their ultimate finding; however, mistakes and miscalculations are not grounds for excluding evidence." (citing *Daubert*, 509 U.S. at 596)).

The most appropriate place to challenge the assumptions made by an expert is at trial on cross-examination and with countervailing expert testimony. ""Matters left for the jury's consideration include the [expert's] alleged miscalculations, erroneous assumptions and inconsistencies…" *Imperial Trading*, 2009 WL 2356292, at *3. In denying a *Daubert* challenge to Dr. Rice based on his allegedly faulty assumptions, this Court has previously held "the credibility and amount of weight that should be applied to the opinions of the countervailing

experts are better left to the consideration of the trier of fact." *Arceneaux v. Lexington Insurance Company*, No. 11-423, 2013 WL 5839325, at *2 (M.D. La. Oct. 30, 2013).

Depositors' most serious challenge is to Dr. Rice's assumption that Nkansah would work until age 68 with a derived work-life expectancy of 26.07 years from the trial date. (Doc. 53-5 at 1.) This figure is one, according to Rice's report, he was asked by Nkansah's counsel to assume. (*Id*.) There is no statement given in Rice's report as to whether such assumption has any factual foundation. In a ruling on another *Daubert* motion in this case, the Court ruled that Nkansah's expert Laura Schexnayder would not be allowed to opine as to a similar work-life expectancy where the sole basis for this data was what counsel had asked her to assume and data from the Owner Operator Independent Drivers Association that "[m]ost independent drivers plan on retiring at 67 years of age…" (Doc. 101 at 15.)

In a similar challenge to Dr. Rice's opinion in another case, the court ruled as follows:

> … Dr. Rice's testimony regarding plaintiff's future lost earnings is only permissible if alternative evidence shows that Plaintiff's personal characteristics - including his health, occupation, or other facts - are likely to give him a longer work-life expectancy than the rate provided by the Department of Labor's statistical tables. Here, Plaintiff has expressed an intention to 'present evidence at trial that he would have continued working past the average work-life expectancy. (citation omitted).' Because the nature of this evidence plaintiff plans to present is not entirely clear at present, the Court deems it most appropriate to defer its ruling on this aspect of Defendant's motion at the present time. However, Dr. Rice will not be permitted to testify regarding his future lost wage calculations based merely on his assumption of Plaintiff's work-life expectancy. (Citation omitted). Nor will self-serving testimony regarding the fact that plaintiff 'intended' to work until age 70 suffice.

*Naquin v. Elevating Boats, LLC, supra* at *4–*5.

Here, unlike the situation in *Naquin*, Plaintiff has expressed no intention to offer objective evidence showing that Nkansah's work-life would be longer than the statistical average. If Nkansah was relying on his other expert, Laura Schexnayder, to provide this

8

information, the Court has already ruled such opinion testimony unreliable and inadmissible. Thus, Plaintiff Nkansah will be given two weeks from the hearing date to submit a statement of such objective evidence he intends to use to support such a contention or, alternatively, to have Dr. Rice issue a supplemental report utilizing a work-life expectancy based on supportable statistical information. If Plaintiff chooses the latter option, Defendants will be allowed to depose Dr. Rice before trial should they choose to do so.

However, with respect to Depositors' remaining complaints about the Rice report and testimony (Rice's failure to consider Nkansah's income tax returns, his failure to take into account the need to deduct Nkansah's expenses in order to reach an accurate earnings amount, and the assumption made that Mr. Nkansah cannot work as a 'long-haul' trucker and cannot become an 'owner-operator'), these opinions and assumptions are more appropriately addressed by way of cross-examination and/or the introduction of Depositors' own economic expert Holly Sharp. As to these items, Depositors' motion is denied.

V. CONCLUSION

Accordingly,

**IT IS ORDERED** that, for the above reasons, the Motion in Limine to Exclude Expert Report and Testimony of G. Randolph Rice filed by defendant Depositors Insurance Company (Doc. 53) is **GRANTED IN PART** and **DENIED IN PART**.

Signed in Baton Rouge, Louisiana, on <u>June 28, 2017</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**